[No. 6827-3-II.  Division Two.  March 29, 1983.]

PIERCE COUNTY, ET AL, *Respondents,* v. EARL KEEHN, ET AL, *Appellants.*

*Donald H. McGavick* and *James R. Heller,* for appellants.

*Don Herron, Prosecuting Attorney,* and *Joseph F. Quinn, Deputy,* for respondents.

PETRIE, J.—In 1973 the Board of County Commissioners of Pierce County adopted resolution 16500 creating Utilities Local Improvement District (ULID) 73–1 to carry out a portion of the Chambers Creek–Clover Creek Basin Sewerage General Plan previously adopted in 1969. On April 27, 1982, Earl Keehn, Claude Pope and Forrest Rothwell filed with the Pierce County Auditor an initiative petition, designated Initiative 1, to amend resolution 16500 by adding two new sections as follows:

> [Section 1.] No warrants, notes, or bonds shall be issued against the [ULID] 73–1 fund in excess of the available and unimpaired balance in such fund at the time of issuance without prior approval of a majority of the voters.
> [Section 2.] No assessment charged against any parcel of land for sewers under [ULID] 73–1 shall be due, in whole or in part, until the sewer adjacent to and serving the parcel is operational.

Despite his misgivings as to the constitutionality of Initiative 1, the prosecuting attorney prepared a ballot title. Petitions were then circulated and 11,000 signatures were collected. When these signed petitions were presented to

the Pierce County Auditor, he refused to canvass the signatures. Ultimately, on June 28, 1982, the County filed an action to declare Initiative 1 invalid. In September the trial court granted the County's motion for summary judgment, holding that the auditor (and County Executive) properly refused "to accept, verify, register, or file the initiative petition under Article V, Section 5.40 of the [Pierce] County Charter."

Keehn, Pope and Rothwell appealed to the Supreme Court, but the cause was transferred to this court for resolution of the issues involved. The dispositive issue is whether RCW 36.94, specifying counties' authority to create, finance, construct, operate, regulate, and control sewerage systems, permits counties to govern those systems by the initiative process authorized by county charter. We hold that, except to the limited extent expressly provided in RCW 36.94, the initiative process is not available to govern counties' sewerage systems.

RCW 36.94.020 declares in part,

> [t]he construction, operation, and maintenance of a system of sewerage . . . is a county purpose.

RCW 36.94.030 provides in part,

> [w]henever the county *legislative authority* deems it advisable and necessary for the public health and welfare of the inhabitants of the county to establish, purchase, acquire, and construct a system of sewerage . . . the board[1] shall adopt a sewerage . . . general plan . . .

Under RCW 36.94.220 a county is granted the power to establish a ULID within the area of a sewerage general plan and to levy assessments on property specially benefited by the district.

Creation of a ULID may be initiated either by resolution of the legislative authority or by petition signed by owners

---

[1]RCW 36.94.010(6) defines a board as "one or more boards of county commissioners and/or the legislative authority of a home rule charter county." Pierce County adopted a home rule county charter in 1980, effective May 1, 1981. The legislative branch of the County's government is now a 7–member council designated as "the policy determining body of the County . . ."

of 51 percent of the land area within the proposed district. RCW 36.94.230. For the purpose of carrying out the lawful purposes granted by RCW 36.94, the "legislative authority" is authorized to issue bonds. RCW 36.94.200. Regardless of whether the district is initiated by petition or resolution, "the county legislative authority shall conduct a public hearing" at which time "the authority shall hear objections" from persons affected by the proposal and "may make . . . such modifications in plans for the proposed improvement as are deemed necessary: . . ." RCW 36.94-.240. The next two paragraphs of the statute provide:

After said hearing *the county legislative authority has jurisdiction to* overrule protests and *proceed with any such improvement* initiated by petition or resolution: *Provided, That the jurisdiction of the authority to proceed* with any improvement initiated by resolution *shall be divested by protests* filed with the clerk of the authority prior to said public hearing signed *by the owners,* according to the records of the county auditor, *of at least forty percent of the area of land* within the proposed local district. *No action whatsoever may be maintained challenging the* jurisdiction or *authority of the county to proceed with the improvement* and creating the local district or in any way challenging the validity thereof or any proceedings relating thereto *unless that action is served and filed no later than thirty days after the date of passage of the resolution* ordering the improvement and creating the local district.

If the county *legislative authority* finds that the district should be formed, it *shall* by resolution order the improvement, adopt detailed plans of the local district and declare the estimated cost thereof, acquire all necessary land therefor, pay all damages caused thereby, and *commence in the name of the county* such eminent domain proceedings and supplemental assessment or reassessment *proceedings to pay all eminent domain awards* as may be necessary to entitle the county *to proceed with the work.* The county *legislative authority shall proceed with the work* and file with the county treasurer its roll levying special assessments in the amount to be paid by special assessment against the property situated within the local district in proportion

to the special benefits to be derived by the property therein from the improvement.

(Italics ours.) Finally, RCW 36.94.910 provides:

This chapter shall be complete authority for the establishment, construction and operation and maintenance of a system or systems of sewerage and/or water hereby authorized, and shall be liberally construed to accomplish its purpose. Any act inconsistent herewith shall be deemed modified to conform with the provisions of this chapter for the purpose of this chapter only.

Pierce County contends that the intent of the legislation in these foregoing statutes is that the local initiative process procedures reserved in its charter provisions[2] may not be invoked, because those procedures would thwart the legislative purpose as enunciated in RCW 36.94, citing *State ex rel. Guthrie v. Richland,* 80 Wn.2d 382, 494 P.2d 990 (1972). Keehn, Pope and Rothwell, on the other hand, contend that Initiative 1 does not conflict with the expressed legislative intent because the initiative does not prevent construction of the sewer project; it merely (1) governs the timing of payments on the assessments and (2) requires voter approval before bonds may be issued. We hold that *Guthrie* requires affirmance of the summary judgment entered in the case at bench.

In *Guthrie* the court was confronted with a voter attempt to require a referendum vote on an ordinance adopted by the city's "governing body" providing for improvements to a city water system to be financed by revenue bonds. By statute, voter approval was not required when the proposed addition was to be financed by revenue bonds. RCW 35.92-.070. The court noted that, under this same statute, when submission to the electorate for voter approval was not required, the "corporate authorities" of the city "*may pro-*

---

[2]Section 5.20 of the charter provides in part, "[t]he people reserve the power of initiative." Section 5.40(1) provides in part, "[a]ny legal voter . . . may file an initiative proposal with the filing officer, . . ." Section 5.40(4) provides in part, "[t]he filing officer shall verify the sufficiency of the signatures on the petition, and if it is validated, submit the proposal to the people at the next general election . . ."

*ceed forthwith* to purchase, construct, and acquire the public utility or make additions, . . . and to make payment therefor." (Italics ours.) The court noted the significance of this power to proceed as follows:

This means they are authorized to enter into contracts and issue bonds. These are things which cannot be effectively done until it is known that the city has authority to proceed. If the ordinance in question is subject to the referendum, its validity cannot be assured until the period for filing petitions has expired. And, of course, if the referendum is invoked, the authority to proceed cannot be determined until after an election is held.

*Guthrie,* 80 Wn.2d at 387.

In the case at bench, Pierce County is not merely authorized to proceed, it has the *duty* to proceed. Indeed, the County has proceeded. As of August 1982, despite delays occasioned by protracted litigation in both the federal and state judicial systems, the County had expended in excess of $28 million through alternative financing to complete approximately 16 percent of the project. We are told that the assessment roll has now been completed, hearings on protests have been conducted, and the roll, having been approved by the Council, is now under judicial scrutiny pursuant to RCW 36.94.290, which allows individual property owners to challenge their assessments. Almost 10 years have elapsed since the enactment of resolution 16500. Manifestly, Pierce County's legislative authority's duty to proceed with the work would be substantially impaired if, at this late date (or, indeed, at any time before completion of the project), an initiative which would drastically alter the system's basic ability to finance ULID 73–1 could be submitted to the electorate. Such a ruling would most certainly thwart the legislative intent as expressed throughout RCW 36.94 in its entirety and would run counter to the legislative supremacy expressed therein. The Legislature recognized the necessity for placing time limitations on ULID review and provided for them. Initiative 1 is an inappropriate vehicle to amend ULID 73–1.

Judgment affirmed.

PETRICH, C.J., and WORSWICK, J., concur.

Reconsideration denied May 10, 1983.