**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| PORT OF TACOMA, a Washington State Municipal Corporation; ECONOMIC DEVELOPMENT BOARD FOR TACOMA-PIERCE COUNTY, a Washington State Non-Profit Corporation; TACOMA-PIERCE COUNTY CHAMBER, a Washington State Non-Profit corporation, | No. 49263-6-II |
| Respondents, | |
| v. | |
| SAVE TACOMA WATER, a Washington political committee, | PUBLISHED OPINION |
| Appellant, | |
| DONNA WALTERS, sponsor and Treasurer of SAVE TACOMA WATER; JON AND JANE DOES 1-5; (Individual sponsors and officers of SAVE TACOMA WATER); CITY OF TACOMA, a Washington State Municipal Corporation; and JULIE ANDERSON, in her capacity as PIERCE COUNTY AUDITOR, | |
| Defendants. | |

BJORGEN, J. — Save Tacoma Water (STW) appeals from the superior court's declaratory judgment and permanent injunction preventing it from placing two initiatives on the Tacoma municipal ballot. STW argues that the superior court did not have the authority to conduct a pre-election review of the proposed initiatives, that the superior court erred by determining that

various provisions were beyond the scope of the local initiative power and conflicted with state law, and that the injunction violated STW's right to free speech.

We hold that the superior court had the authority to review whether the proposed initiatives exceeded the scope of the local initiative power and that its review did not offend separation of power principles. We also hold that the superior court properly determined that the challenged provisions were beyond the scope of the local initiative power and that one of the provisions conflicted with state law. Finally, we hold that the injunction preventing the initiatives from appearing on the ballot did not violate STW's right to free speech. Consequently, we affirm the superior court.

FACTS

In 2016, STW, a political committee, began circulating two initiative petitions among Tacoma residents in order to place the proposed initiatives on the upcoming municipal ballot. One initiative proposed an amendment to the Tacoma City Charter (Charter Initiative) and the other sought to enact a new municipal ordinance. The two initiatives contained text that was substantially identical in effect. The following are the provisions of common effect that are of significance to this appeal.

[From the Charter Initiative]

(A) People's Vote on Large Water Use Applications [(Water Provision)].
. . . . Before providing water utility service to any applicant for 1336 CCF [(centum cubic feet)] (one million gallons), or more, of water daily from the City, the City shall place the applicant's request for water utility service before the voters on the next available General Election Ballot, in a manner substantially conforming to the rules for Section 2.22 of this Charter. The applicant shall pay for the costs of the vote of the people. Only if a majority of the voters approve the water utility service application and all other application requirements are met may the City provide the service. . . .

(B) Sustainable Water Protection is an Inviolable Right that Government Cannot Infringe [(Preemption Provision)].

. . . . The People's Right to Water Protection vote provides a democratic safeguard, on top of the City's existing application process, to ensure that large new water users do not threaten the sustainability of the people's water supply. To prevent subsequent denial of the People's Right to Water Protection by state law preemption, all laws adopted by the legislature of the State of Washington, and rules adopted by any state agency, shall be the law of City of Tacoma only to the extent that they do not violate the rights or mandates of this Article.

(C) Water Protection supersedes Corporate Interests.
As the People's Right to Water Protection is foundational to the people's health, safety, and welfare, and must be held inviolate, no government actor, including the courts, will recognize as valid any permit, license, privilege, charter, or other authorization, that would violate the rights or mandate of this Article, issued for any corporation, by any state, federal, or international entity. [Subordination of Judicial Review Provision]. In addition, corporations that violate, or seek to violate the rights and mandates of this Article shall not be deemed "persons" to the extent that such treatment would interfere with the rights or mandates enumerated by this Article, nor shall corporations possess any other legal rights, powers, privileges, immunities, or duties that would interfere with the rights or mandates enumerated by this Article [(Subordination of Corporate Rights Provision)]. . . .

(D) Enforcement.
The City or any resident of the City may enforce this section through an action brought in any court possessing jurisdiction over activities occurring within the City of Tacoma, including, but not limited to, seeking an injunction to stop prohibited practices. . . .

[From the initiative amending Tacoma ordinance]

(E) Severability and Construction.
The provisions of this Ordinance shall be liberally construed to achieve the defined intent of the voters. The provisions of this Ordinance are severable, and the petitioners intend that all valid provisions of the initiative be placed on the ballot and enacted into law even if some provisions are found invalid.

Clerk's Papers (CP) at 28-31.

On June 6, 2016, the Port, the Economic Development Board for Tacoma-Pierce County, and the Tacoma-Pierce County Chamber filed a complaint in superior court for declaratory judgment and injunctive relief against STW, various sponsors of that organization, the City and the Pierce County Auditor. The City filed an answer to the complaint, which included cross-

3

claims against STW and the additional parties named as defendants. The City then filed a motion for a preliminary and a permanent injunction to prevent STW's initiatives from appearing on the municipal ballot.

On July 1, the superior court granted the Port's motion for declaratory judgment and permanently enjoined the Pierce County Auditor from placing the initiatives on the 2016 ballot. The court determined that the Water Provision, Part A in the excerpt above, concerned an administrative matter beyond the scope of the local initiative power. The court further ruled that the Water Provision conflicted with state law and determined also that the Preemption Provision, Part B above, was beyond the scope of the local initiative power because the provision attempted to subordinate all other law to the Water Provision. The court additionally determined that the Subordination of Corporate Rights Provision, part of Part C above, was beyond the scope of the local initiative power because it attempted to alter corporations' rights under existing law. Similarly, the court ruled that the Subordination of Judicial Review Provision, part of Part C above, was beyond the scope of the local initiative power because it conflicted with existing law. Finally, the court concluded that the remaining initiative provisions were not severable and that no portion of the initiatives could be placed on the ballot.

According to the declaration of Sherry Bockwinkel, STWs signature collection effort "stalled when people heard that [STW] was being sued for circulating the petition" and its "signature turn-ins" went down. CP at 585. The Bockwinkel declaration also states that "[m]any volunteer signature gatherers were now afraid that they would be named individually in a lawsuit" for their efforts. CP at 585.

On July 29, STW filed an appeal of the superior court's grant of a permanent injunction and declaratory judgment.[1] We affirm the superior court.

## ANALYSIS

### I. STANDARD OF REVIEW

We review whether a proposed initiative is beyond the scope of the local initiative power de novo as a question of law. *City of Port Angeles v. Our Water-Our Choice!*, 170 Wn.2d 1, 7, 239 P.3d 589 (2010). We review constitutional issues de novo. *Washington Citizens Action of Washington v. State*, 162 Wn.2d 142, 151, 171 P.3d 486 (2007).

### II. AUTHORITY OF SUPERIOR COURT

STW asserts that the superior court lacked authority to conduct a pre-election review of its proposed local initiatives and that such review violated separation of powers principles. We disagree.

Generally, courts will refrain from considering the substantive validity of a proposed law to avoid interfering with electoral and legislative processes and to avoid rendering potentially advisory opinions. *Seattle Bldg. & Constr. Trades Council v. City of Seattle*, 94 Wn.2d 740, 745-46, 620 P.2d 82 (1980). However, our Supreme Court has identified an exception to this rule which authorizes courts to "review local initiatives and referendums to determine . . . whether 'the proposed law is beyond the scope of the initiative power.'" *Our Water-Our Choice!*, 170 Wn.2d at 7 (quoting *Seattle Bldg.*, 94 Wn.2d at 746). Our Supreme Court has explained that under the state constitution, municipal governments are not fully sovereign and derive their authority to utilize the initiative process from statute, rather than the constitution.

---

[1] STW's notice of appeal states that Sherry Bockwinkel, Donna Walters, and Jon and Jane Does 1-5, defendants in the case before the superior court, are not participating in this appeal.

*Our Water-Our Choice!*, 170 Wn.2d at 8. Under RCW 35.22.200, a charter city such as Tacoma may "provide for direct legislation by the people through the initiative," but only "upon any matter within the scope of the powers, functions, or duties of the city." Under *Our Water-Our Choice!*, 170 Wn.2d at 7, a court may properly review whether a measure exceeds the scope of the initiative power.

STW further asserts that "[t]he Court should abide by the established justiciability rules and recognize that it has no authority to interfere with proposed legislation." Br. of Appellant at 30. Our Supreme Court has held that an issue presents a justiciable controversy when it presents (1) "'an actual, present and existing dispute, or the mature seeds of one,'" rather than a "'possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests,'" (3) which involves direct and substantial interests, "'rather than potential, theoretical, abstract or academic'" interests, "'and (4) a judicial determination of which will be final and conclusive.'" *To-Ro Trade Shows v. Collins*, 144 Wn.2d 403, 411, 27 P.3d 1149 (2001) (quoting *Diversified Industr. Dev. Corp. v. Ripley*, 82 Wn.2d 811, 814-15, 514 P.2d 137 (1973)). "Inherent in these four requirements are the traditional limiting doctrines of standing, mootness, and ripeness, as well as the federal case-or-controversy requirement." *To-Ro*, 144 Wn.2d at 411. STW does not offer any analysis or argument on why the present issue is not justiciable under these standards, but rather appears to argue that this cause is not justiciable because it offends the separation of powers.

*Spokane Entrepreneurial Center v. Spokane Moves to Amend Constitution*, 185 Wn.2d 97, 100, 369 P.3d 140 (2016) and *Our Water-Our Choice!*, 170 Wn.2d at 7, each held that courts may entertain pre-election challenges to local initiatives based on the claim that the initiative is beyond the local initiative power. In addition, *Spokane Moves* recognized that "the local

initiative power is limited to legislative matters that are within the authority of the city." *Spokane Moves*, 185 Wn.2d at 107. Consistently with this, *Spokane Moves* also recognized that municipalities may not enact legislation that conflicts with state or federal law. *Spokane Moves*, 185 Wn.2d at 108, 110. Thus, the inquiry into whether a measure conflicts with state law is part of determining whether it is beyond the local initiative power.

In *Spokane Moves*, the Supreme Court prefaced its analysis with a caution:

> We have expressed great concern about reviewing initiatives prior to enactment. This concern has been attributed to . . . "the constitutional preeminence of the right of initiative," *Coppernoll [v. Reed]*, 155 Wn.2d [290,] 297, 119 P.3d 318 [(2005)]. There are also general concerns that "the courts should not interfere in the electoral and legislative processes, and that the courts should not render advisory opinions." *Seattle Bldg. & Constr. Trades Council v. City of Seattle*, 94 Wn.2d 740, 746, 620 P.2d 82 (1980).

185 Wn.2d at 104. Similarly, *Our Water-Our Choice!* recognized that "[g]enerally, judicial pre[-]election review of initiatives and referendums is disfavored." 170 Wn.2d at 7.

These considerations lie at the heart of the inquiry into the separation of powers. Especially, the court's concern for the "'constitutional preeminence'" of the right of initiative, its avoidance of interference "'in the electoral and legislative processes,'" and its shunning of advisory opinions show that its analysis took into account and honored the boundaries between legislative, executive, and judicial authority. *Spokane Moves*, 185 Wn.2d at 104 (quoting *Coppernoll*, 155 Wn.2d at 297) (quoting *Seattle Bldg.*, 94 Wn.2d at 746). These cases thus implicitly hold that their analyses observe the proper separation of powers. With that, we hold that the superior court had authority to conduct a pre-election review of the proposed local initiatives, and we turn to the challenged aspects of the superior court decision.

### III. SCOPE OF LOCAL INITIATIVE POWERS

STW argues that the superior court erred by determining that the proposed initiatives were beyond the scope of the local initiative power. We disagree.

As noted, "the local initiative power is limited to legislative matters that are within the authority of the city." *Spokane Moves*, 185 Wn.2d at 107. The court has identified at least three limits on the local initiative power. *Spokane Moves*, 185 Wn.2d at 107. First, "'administrative matters, particularly local administrative matters, are not subject to initiative or referendum.'" *Spokane Moves*, 185 Wn.2d at 107 (quoting *Our Water-Our Choice!*, 170 Wn.2d at 8). Second, "a local initiative 'is beyond the scope of the initiative power if the initiative involves powers granted by the legislature to the governing body of a city, rather than the city itself.'" *Spokane Moves*, 185 Wn.2d at 108 (quoting *City of Sequim v. Malkasian*, 157 Wn.2d 251, 261, 138 P.3d 943 (2006)). Third, municipalities may not enact legislation which conflicts with state or federal law. *Spokane Moves*, 185 Wn.2d at 108, 110.

### A. Administrative vs. Legislative Matters

STW maintains that the superior court improperly determined that the Water Provision in its initiatives is administrative and, therefore, beyond the scope of the local initiative power. We disagree.

Generally, "'a local government action is administrative if it furthers (or hinders) a plan the local government . . . has . . . adopted.'" *Spokane Moves*, 185 Wn.2d at 107 (quoting *Our Water-Our Choice!*, 170 Wn.2d at 10). Our Supreme Court has also distinguished legislative from administrative matters by determining, respectively, "'whether the proposition is one to make new law or declare a new policy, or merely to carry out and execute law or policy already

in existence.'" *Spokane Moves*, 185 Wn.2d at 107-08 (quoting *Ruano v. Spellman*, 81 Wn.2d 820, 823, 505 P.2d 447 (1973)).

STW claims that the Water Provision contained in its initiatives creates a new policy and is therefore legislative. However, our Supreme Court has held that attempting to graft a voter approval requirement onto an existing regulatory system constitutes an administrative matter which is outside the scope of the local initiative power. In *Spokane Moves*, the Supreme Court considered whether a local initiative requiring "any proposed zoning changes involving large developments to be approved by voters in the neighborhood" was administrative. 185 Wn.2d at 108. The court held that the initiative provision was administrative, and beyond the scope of the local initiative power, because "the city of Spokane has already adopted processes for zoning and development" and the "provision would modify those processes for zoning and development decisions." *Spokane Moves*, 185 Wn.2d at 108.

In this case, chapter 12.10 of the Tacoma Municipal Code governs how the City processes applications for water service. STW's initiatives would require applicants for "water utility services" who are projected to use more than 1336 CCF of water to submit their application to a vote of the people of the City, in addition to complying with "*all other application requirements*." CP at 30 (emphasis added). Furthermore, the initiatives state, "The People's Right to Water Protection vote provides a democratic safeguard, *on top of the City's existing application process*." CP at 28 (emphasis added).

As in *Spokane Moves*, STW's initiatives are administrative because they attempt to modify local permit processes already adopted by the City by adding a voter approval requirement to them. Therefore, we hold that the initiative's voter approval provision is beyond the scope of the local initiative power.

B.      Conflict With RCW 43.20.260

Pre-election challenges to initiatives based on substantive invalidity are generally not allowed. *Coppernoll*, 155 Wn.2d at 297-98. However, the court does consider claims that the subject matter of a measure is not proper for direct legislation (ballot measures), usually in the context of the more limited powers of initiatives under city or county charters or enabling legislation. *Id.* at 299. More specifically, *Spokane Moves* held in its analysis of a pre-election challenge to a local initiative that "'[w]hile the inhabitants of a municipality may enact legislation governing local affairs, they cannot enact legislation which conflicts with state law.'" 185 Wn.2d at 108 (quoting *Seattle Bldg.*, 94 Wn.2d at 747).

> RCW 43.20.260 states, in pertinent part:
>
> A municipal water supplier, as defined in RCW 90.03.015, has a duty to provide retail water service within its retail service area if: (1) Its service can be available in a timely and reasonable manner; (2) the municipal water supplier has sufficient water rights to provide the service; (3) the municipal water supplier has sufficient capacity to serve the water in a safe and reliable manner as determined by the department of health; and (4) it is consistent with the requirements of any comprehensive plans or development regulations.

In determining whether an ordinance conflicts with state law under the Washington Constitution, article I, section 11, "'the test is whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa.'" *Weden v. San Juan County*, 135 Wn.2d 678, 693, 958 P.2d 273 (1998) (quoting *City of Bellingham v. Schampera*, 57 Wn.2d 106, 111, 356 P.2d 292 (1960)). "'Judged by such a test, an ordinance is in conflict if it forbids that which the statute permits.'" *Weden*, 135 Wn.2d at 693 (quoting *Schampera*, 57 Wn.2d at 111).

RCW 43.20.260 places a duty on the City to provide retail water service if its requirements are met. The initiative measure at issue would require the City to deny water service to certain applicants even if all the requirements of RCW 43.20.260 were met. Thus, the

effect of the initiative would be to prohibit the City from carrying out a duty imposed by state law, a stark conflict under the test in *Weden*. Under *Coppernoll*, *supra*, and *Spokane Moves*, *supra*, this conflict supplies an additional basis for upholding the superior court's decision.

C.      Severability

Having determined that the Water Provision is beyond the scope of the local initiative power, we must consider whether the remaining provisions are severable from the invalid provision. STW asserts that the superior court erred by not placing any remaining valid provisions of the initiative on the ballot. We disagree.

To determine whether an invalid portion of an initiative is severable, we consider "whether the [invalid] provisions are so connected to the remaining provisions that it cannot be reasonably believed that the legislative body would have passed the remainder of the act's provisions without the invalid portions." *League of Women Voters of Washington v. State*, 184 Wn.2d 393, 411, 355 P.3d 1131 (2015). Stated another way, an invalid provision may be severed from the remaining provisions "unless elimination of the invalid part would render the remaining part useless to accomplish the legislative purposes." *League of Women Voters*, 184 Wn.2d at 411-12.

In this case, the Water Provision of STW's initiatives represents the core of each measure. All of the remaining provisions are designed to either implement or protect the proposed right to require all applicants for water services with a projected daily usage of 1336 CCF of water or more to submit their applications to a vote of the people. If the Water Provision is invalid, then the other initiative provisions would be robbed of practical effect. For instance, without the Water Provision there is no manner in which state law would preempt a provision of the initiatives, corporations would violate a provision of the initiatives, or a person would bring a

11

cause of action under the provisions of the initiatives. Without the Water Provision, there is no triggering mechanism that would allow the remaining provisions to take effect. Therefore, we hold that the remaining initiative provisions are not severable, and the initiatives fail in their entirety.

## IV. FREE SPEECH

STW contends that the superior court violated its right to free speech under the First Amendment of the United States Constitution and article I, sections 4 and 5 of the Washington Constitution. STW argues that the violations lie in the superior court's determination that STW's initiatives exceeded the scope of the local initiative power and issuance of an injunction to prevent the initiatives from appearing on the ballot. We disagree.

The First Amendment to the United States Constitution mandates that "Congress shall make no law . . . abridging the freedom of speech, or of the press." Article I, section 4 of the Washington Constitution states, "The right of petition and of the people peaceably to assemble for the common good shall never be abridged." Article I, section 5 states, "Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that right."

A.      The First Amendment

In *Meyer v. Grant*, the United States Supreme Court held that "the circulation of a[n initiative] petition involves the type of interactive communication concerning political change that is appropriately described as 'core political speech.'" 486 U.S. 414, 421, 108 S. Ct. 1886, 100 L. Ed. 2d 425 (1988). STW is correct that barring the initiatives from the ballot would diminish this political speech generated through the process of gathering signatures.

We hold above, though, that STW's initiative is outside the scope of the local initiative's power. STW's position, therefore, reduces to the argument that it has a constitutional right to place an initiative on the ballot, whether or not authorized by state or local law.

This argument was rejected by the Ninth Circuit in *Angle v. Miller*, 673 F.3d 1122, 1133 (2012) (citing *Meyer*, 486 U.S. at 424), which held that "[t]here is no First Amendment right to place an initiative on the ballot." STW has not cited to any authority for the proposition that one has a free speech right to have a local measure beyond the scope of the initiative power appear on a ballot. In the absence of authority, we "may assume that counsel, after diligent search, has found none." *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). Under *Angle*, STW does not have a First Amendment right to place a local initiative on the ballot. STW has not presented any reasons why *Angle* is ill-considered or inconsistent with Washington case law. Therefore, its argument fails.

B.    Article I, Section 5 of Washington Constitution[2]

STW also argues that pre-election review of a local initiative violates its right to free speech under article I, section 5 of the Washington Constitution. For support, STW cites to our Supreme Court's decision in *Collier v. City of Tacoma*, 121 Wn.2d 737, 854 P.2d 1046 (1993). *Collier* involved a challenge under the state and federal constitutions to city ordinances that restricted the posting of political signs in residential areas to a period beginning 60 days before the election and ending 7 days after it. *Collier* held that the ordinances were viewpoint-neutral

---

[2] Although STW refers to both article I, sections 4 and 5 of the Washington Constitution as part of its argument, it has not cited to any cases for an analysis of this issue under article I, section 4. We do not consider conclusory arguments unsupported by citation to authority or rational argument. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Therefore, we do not separately consider STW's claims under article I, section 4.

but content-based in that they classified permissible speech in terms of subject matter. *Collier*, 121 Wn.2d at 752-53. The court deemed the ordinances to be time, place, and manner restrictions and held that such restrictions on speech that are viewpoint-neutral but subject-matter based are valid so long as they are narrowly tailored to serve a compelling state interest and leave open ample alternative channels of communication. *Collier*, 121 Wn.2d at 752-53. The court then concluded that the ordinances' durational requirements failed this test and therefore violated the First Amendment of the United States Constitution and article I, section 5 of the Washington Constitution. *Id.* at 758-60.

For several reasons, the holdings and rationale of *Collier* do not serve STW's position. First, the challenged injunction before us does not classify speech on the basis of subject matter or content as did the measures in *Collier*. Instead, the injunction rests on the principles that a measure is beyond the local initiative power if it is administrative or in conflict with state law. Neither the injunction nor the principles on which it is based distinguish among measures or in associated speech activities on the basis of content or subject matter. Thus, *Collier* does not show that the injunction at issue violates article I, section 5.

Second, if the inquiry into whether a measure is administrative or in conflict with state law were deemed to make it content-based, STW's position would still reduce to the claim that it has a constitutional right to place an initiative on the ballot, without regard to the scope of the initiative power under state law. As noted above, the Ninth Circuit held to the contrary with respect to the First Amendment in *Angle*. *Collier* did not decide whether placing a local initiative on the ballot constitutes political speech protected under article I, section 5, and STW cites to no other authority for its contention that pre-election review of a local initiative violates

14

article I, section 5. For these reasons also, we hold that the injunction at issue does not violate article I, section 5 under *Collier*.[3]

CONCLUSION

The superior court had authority to review whether the proposed initiatives exceeded the scope of the local initiative power, and its review did not offend the separation of powers. In exercising that authority, the superior court properly determined that the challenged provisions were beyond the scope of the local initiative power and that one of the provisions conflicted with state law. Finally, the injunction preventing the initiatives from appearing on the ballot did not violate STW's right to free speech.

We affirm the superior court.

_____
Bjorgen, J.

We concur:

_____
Worswick, P.J.

_____
Melnick, J.

---

[3] With the holdings in this opinion, it is unnecessary to reach any other issues raised by the parties.