# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Appellant,<br><br>v.<br><br>ECONOMIC DEVELOPMENT BOARD FOR TACOMA-PIERCE COUNTY, TACOMA-PIERCE COUNTY CHAMBER, JOHN WOLFE, in his official capacity as Chief Executive Officer for the PORT OF TACOMA, and CONNIE BACON, DON JOHNSON, DICK MARZANO, DON MEYER, and CLARE PETRICH, in their official capacities as Commissioners for the PORT OF TACOMA,<br><br>Respondents. | No. 49892-8-II<br><br><br><br><br><br><br><br><br><br><br><br>PUBLISHED OPINION |

WORSWICK, J. — The State appeals the summary judgment dismissal of its regulatory enforcement action against the Economic Development Board for Tacoma-Pierce County (EDB), Tacoma-Pierce County Chamber (Chamber), and the Port of Tacoma through its individual officers (Port). The State alleged that the EDB, the Chamber, and the Port (collectively, "defendants") failed to report independent expenditures as required by the Fair Campaign Practices Act (FCPA),[1] and that the Port used public funds to oppose ballot propositions.

The State argues that the defendants' legal expenditures spent to block the Save Tacoma Water (STW) ballot propositions were "independent expenditures" as defined in RCW

---

[1] Chapter 42.17A RCW. As relevant here, the FCPA requires that political campaign contributions and expenditures be fully disclosed to the public.

42.17A.255, that the Port improperly used public funds to oppose the STW ballot proposition under RCW 42.17A.555,[2] and that the trial court improperly awarded fees and costs to the defendants.

The defendants argue that the State's interpretation of RCW 42.17A.255 is erroneous and that it violates the First Amendment and renders the statute void for vagueness. The Port additionally argues that it did not improperly use public funds because its actions fall within two exceptions to the prohibition against the use of public facilities to oppose ballot propositions in RCW 42.17A.555.

We hold that the defendants made independent expenditures that required disclosure under RCW 42.17A.255, that RCW 42.17A.255 does not violate the First Amendment and is not void for vagueness, and that the Port used public facilities without meeting either cited exception in RCW 42.17A.555. Accordingly, we reverse the trial court's order of dismissal, and we remand for further proceedings.[3]

FACTS

I. SAVE TACOMA WATER BALLOT PROPOSITION PROCEEDINGS

STW's Charter Initiative 5 and Code Initiative 6 became local ballot propositions when citizens filed the initiatives with the Tacoma City Clerk before circulation for signatures. These

---

[2] RCW 42.17A.555 prohibits the use of public facilities to support "a campaign for election of any person to any office or for the promotion of or opposition to any ballot proposition."

[3] The defendants also seek attorney fees and costs. Because we reverse, we do not address these arguments.

two ballot propositions aimed to require any land use proposal in the City of Tacoma requesting a daily consumption of at least one million gallons of water be submitted to a public vote.

The defendants filed a declaratory judgment action against the STW ballot propositions, seeking a judicial directive preventing the STW ballot propositions from being placed on the local ballot. The defendants argued that the STW ballot propositions were beyond the scope of the City's initiative power. Prior to filing the petition, the Port's commissioners, at a public meeting, voted to ratify the Port's decision to file a declaratory judgment action. Ultimately, the declaratory judgment action successfully blocked the provisions from being placed on the ballot. *Port of Tacoma v. Save Tacoma Water*, 4 Wn. App.2d 562, 579, 422 P.3d 917 (2018), *review denied*, 192 Wn.2d 1026 (2019).

## II. FAIR CAMPAIGN PRACTICES ACT PROCEEDINGS

A citizen later filed a complaint with the attorney general, seeking information regarding the defendants' use of funds to challenge the STW ballot propositions. At the request of the attorney general, the Public Disclosure Commission (PDC) staff reviewed the complaint against the defendants. PDC staff concluded that the EDB and the Chamber made independent expenditures as defined in RCW 42.17A.255. PDC staff also concluded that the Port did not violate RCW 42.17A.555. The PDC returned the matter to the attorney general with "no recommendation for legal action." Clerk's Papers (CP) at 451. The PDC mentioned the need for additional rulemaking to provide greater clarity regarding these provisions.

Despite the PDC making no recommendation, the State, through the attorney general, filed this action against the defendants, seeking civil penalties and injunctive relief under the FCPA, chapter 42.17A RCW. The State alleged that the defendants failed to properly report

3

independent expenditures made in opposition to the STW ballot propositions in violation of

RCW 42.17A.255. Additionally, the State alleged that the Port, through its chief executive

officer and its commissioners, impermissibly used public facilities to oppose the STW ballot

propositions in violation of RCW 42.17A.555.

The defendants filed summary judgment motions to dismiss. The trial court granted the

motions, dismissed the action, and awarded attorney fees and costs to the defendants. The State

appeals.

## ANALYSIS

### I. LEGAL PRINCIPLES

A.     *Standard of Review*

We review motions for summary judgment de novo. *Voters Educ. Comm. v. Wash. State*

*Pub. Disclosure Comm'n*, 161 Wn.2d 470, 481, 166 P.3d 1174 (2007). Summary judgment is

appropriate when there are no genuine issues of material fact and the moving party is entitled to

judgment as a matter of law. CR 56(c). Here, there are no issues of material fact. Rather, the

parties disagree on the FCPA's statutory scheme and constitutionality.

We review de novo issues of statutory construction and constitutionality. *State v.*

*Evergreen Freedom Found.*, 192 Wn.2d 782, 789, 432 P.3d 805 (2019). When engaging in

statutory interpretation, we endeavor to determine and give effect to the legislature's intent.

*Jametsky v. Olsen*, 179 Wn.2d 756, 762, 317 P.3d 1003 (2014).

In determining the legislature's intent, we must first examine the statute's plain language

and ordinary meaning. *Jametsky*, 179 Wn.2d at 762. Legislative definitions included in the

statute are controlling, but in the absence of a statutory definition, we give the term its plain and

ordinary meaning as defined in the dictionary. *Lockner v. Pierce County*, 190 Wn.2d 526, 537, 415 P.3d 246 (2018); *American Cont'l Ins. Co. v. Steen*, 151 Wn.2d 512, 518, 91 P.3d 864 (2004). In addition, we consider the specific text of the relevant provision, the context of the entire statute, related provisions, and the statutory scheme as a whole when analyzing a statute's plain language. *Lowy v. PeaceHealth*, 174 Wn.2d 769, 779, 280 P.3d 1078 (2012).

If there is more than one reasonable interpretation of the plain language, the statute is ambiguous. *Evergreen*, 192 Wn.2d at 789. When a statute is ambiguous, we resolve this ambiguity by engaging in statutory construction and considering other indications of legislative intent. *Evergreen*, 192 Wn.2d at 789-90. However, if the statute is unambiguous, we apply the statute's plain meaning as an expression of legislative intent without considering other sources. *Evergreen*, 192 Wn.2d at 789.

B.      *Scope of Challenges to Local Ballot Propositions*

Washington courts conduct pre-election review of local initiatives for only two types of challenges. *Coppernoll v. Reed*, 155 Wn.2d 290, 298-99, 119 P.2d 318 (2005); *City of Port Angeles v. Our Water-Our Choice!*, 170 Wn.2d 1, 7, 239 P.3d 589 (2010). Courts review challenges claiming either that a ballot measure does not comply with procedural requirements or that a ballot measure exceeds the direct legislative power of the initiative. *Coppernoll*, 155 Wn.2d at 298-99.

A litigant may challenge an initiative through a declaratory judgment action. *See, e.g.*, *Spokane Entrepreneurial Ctr. v. Spokane Moves to Amend Constitution*, 185 Wn.2d 97, 101, 369 P.3d 140 (2016). To invoke the Uniform Declaratory Judgments Act, chapter 7.24 RCW a plaintiff must establish the four elements of a justiciable controversy:

5

"(1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and *opposing interests*, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive."

*Coppernoll*, 155 Wn.2d at 300 (emphasis added) (quoting *To-Ro Trade Shows v. Collins*, 144 Wn.2d 403, 411, 27 P.3d 1149 (2001)). A party has standing to challenge a proposed initiative when its interest is within the zone of interests to be regulated or protected by the proposed law and the party will suffer an injury in fact. *Spokane Entrepreneurial Ctr.*, 185 Wn.2d at 103.

C.      *FCPA*

The FCPA is designed, in part, "to provide the public with full disclosure of information about who funds initiative campaigns and who seeks to influence the initiative process." *Evergreen*, 192 Wn.2d at 790. The FCPA contains several policy statements. RCW 42.17A.001. Notably, the statute states that "political campaign and lobbying contributions and expenditures be fully disclosed to the public and that secrecy is to be avoided," that "the public's right to know of the financing of political campaigns and lobbying . . . far outweighs any right that these matters remain secret and private," and that "full access to information concerning the conduct of government on every level must be assured as a fundamental and necessary precondition to the sound governance of a free society." RCW 42.17A.001 (1), (10), (11).

Further, chapter 42.17A RCW

shall be liberally construed to promote complete disclosure of all information respecting the financing of political campaigns and lobbying, and the financial affairs of elected officials and candidates, and full access to public records so as to assure continuing public confidence of fairness of elections and governmental processes, and so as to assure that the public interest will be fully protected.

RCW 42.17A.001(11).

RCW 42.17A.255(1) states, in part, that, "'independent expenditure' means any expenditure that is made in support of or in opposition to any candidate or ballot proposition and is not otherwise required to be reported pursuant to RCW 42.17A.220, 42.17A.235, and 42.17A.240." The statute then states the reporting requirements for independent expenditures. RCW 42.17A.255(2)-(5).

RCW 42.17A.555 contains prohibitions on the use of public facilities to support "a campaign for election of any person to any office or for the promotion of or opposition to any ballot proposition." However, the statute has exceptions to this prohibition, including: "[a]ction[s] taken at an open public meeting" and "normal and regular conduct" of the entity. RCW 42.17A.555(1), (3).

## II. RCW 42.17A.255: INDEPENDENT EXPENDITURES

The State argues that "independent expenditure" includes the expenditures on legal services incurred here by the defendants when challenging the STW ballot propositions. Br. of Appellant at 17. We agree, and hold that "independent expenditure" includes the expenditures at issue here.

After the parties completed briefing in this case, our Supreme Court decided *State v. Evergreen Freedom Foundation*, 192 Wn.2d at 782. In that case, Evergreen Freedom Foundation (EFF) created sample municipal ordinances and ballot propositions for individuals to advance their cause in local municipalities. *Evergreen*, 192 Wn.2d at 786. Citizens in multiple cities used the samples to request that local government either pass the measures, or place them on the ballot for a vote. *Evergreen*, 192 Wn.2d at 786. When the municipalities neither passed

the proposals nor placed them on the ballot, EFF brought three lawsuits in three municipalities

seeking "a judicial directive to the respective city to put each measure on the local ballot."

*Evergreen*, 192 Wn.2d at 787.

EFF did not file campaign disclosure reports for the value of the legal services, so the

State brought a civil regulatory enforcement action against EFF. *Evergreen*, 192 Wn.2d at 787.

The State alleged that "EFF failed to report independent expenditures it made in support of the

noted local ballot propositions." *Evergreen*, 192 Wn.2d at 787. Relevant here, our Supreme

Court held that the value of legal services in support of a ballot proposition are independent

expenditures under RCW 42.17A.255 and that the reporting requirements of RCW 42.17A.255

do not violate the First Amendment. *Evergreen*, 192 Wn.2d at 795-96, 801.

A.       *The Plain Meaning of "Opposition to Any . . . Ballot Proposition" Includes Expenditures*
         *on Legal Services Aimed at Blocking a Ballot Proposition*

The State argues that independent expenditures "in opposition to" a ballot proposition

include the defendants' legal expenditures to prevent the STW ballot proposition from reaching

the ballot. Br. of Appellant at 17. We agree.

Independent expenditures are defined as expenditures "made in support of or in

opposition to any . . . ballot proposition." RCW 42.17A.255. In *Evergreen*, our Supreme Court

made clear that pre-election litigation expenditures can fall within the purview of the FCPA.

*Evergreen*, 192 Wn.2d at 795-96. The Court emphasized FCPA's stated policy and express

directives of liberal construction and complete disclosure of all information respecting the

financing of political campaigns. *Evergreen*, 192 Wn.2d at 795. It further stated:

> [RCW 42.17A.255(1) and RCW 42.17A.005(4)] broadly impose reporting
> requirements concerning "*any expenditure* that is made in support of or in

> opposition to *any* candidate or *ballot proposition*," RCW 42.17A.255(1) . . . , with "ballot proposition" defined to include "*any initiative* . . . proposed to be submitted to the voters." RCW 42.17A.005(4) . . . . The noted language is simply not restricted to electioneering, as EFF asserts. Moreover, where litigation is being employed as a tool to block adoption of an initiative or to force an initiative onto the ballot, as was attempted here, the finances enabling such support (or opposition) would indeed appear to fall within the "any expenditure," triggering the reporting obligation noted above. The contention that litigation support does not qualify as a reportable independent expenditure ignores the express purpose of the FCPA in the context of modern politics.

*Evergreen*, 192 Wn.2d at 795.

*Evergreen* clarifies that pre-election litigation expenditures for legal services used to support a ballot proposition are expenditures within the definition of RCW 42.17A.255 because the language of the statute is not restricted to electioneering. *Evergreen*, 192 Wn.2d at 795. The Court, through a plain meaning analysis, held that "any expenditure" was unambiguous and included litigation expenditures for legal services incurred before the election. *Evergreen*, 192 Wn.2d at 795-96.

Turning to the argument here, the phrase "in opposition to" is also unambiguous. Chapter 42.17A RCW lacks a definition of "in opposition to." However, looking to the dictionary definition, "opposition" is defined as "hostile or contrary action or condition: action designed to constitute a barrier or check." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 1583 (2002).

Here, the defendants brought a declaratory action seeking to enjoin the initiatives from being placed on the ballot or adopted by the City of Tacoma. The defendants' actions opposed the propositions insofar as they intended to prevent ballot propositions from reaching the ballot or becoming law. *See Evergreen*, 192 Wn.2d at 795. As a result, the statutory language "any

expenditure that is made . . . in opposition to . . . a ballot proposition," includes pre-election

expenditures for legal services to block a ballot proposition from reaching the voters. Not only

did the defendants challenge the STW ballot propositions as beyond the scope of the initiative

power, but they succeeded in blocking the STW ballot propositions from reaching the voters.

*See Save Tacoma Water*, 4 Wn. App. 562. The declaratory judgment action was clearly "in

opposition to" the ballot proposals.

Litigation expenses incurred to seek a judicial directive regarding whether measures may

be placed on the ballot are reportable under RCW 42.17A.255. *See Evergreen*, 192 Wn.2d at

787. And RCW 42.17A.255 unambiguously defines "in opposition to" to include pre-election

litigation expenditures on legal services to block an initiative. Thus, expenditures on legal

services to block an initiative are necessarily independent expenditures subject to the statute's

reporting requirements.

B.      *As Interpreted, RCW 42.17A.255 Is Constitutional*

The defendants argue that requiring disclosure of their legal expenditures under RCW

42.17A.255 violates their First Amendment rights and that including their legal expenditures in

the definition of "in opposition to" renders the statute unconstitutionally vague. We disagree.

1. *First Amendment*

Our Supreme Court in *Evergreen* held that RCW 42.17A.255 does not violate the First

Amendment. *Evergreen*, 192 Wn.2d at 801. The Court stated:

> Given the State's important governmental interest in informing the public about the
> influence and money behind ballot measures, as noted above, and the FCPA's vital
> role (via application of RCW 42.17A255 and RCW 42.17A.005(4)) in advancing
> that interest, the disclosure requirement that operates under these statutes satisfies

the exacting scrutiny standard. Accordingly, there is no impermissible infringement of EFF's First Amendment rights, and we so hold.

*Evergreen*, 192 Wn.2d at 801. Accordingly, we follow *Evergreen* and hold that RCW 42.17A.255 does not violate the First Amendment.

2. *Vagueness*

Under the Fourteenth Amendment to the United States Constitution, a statute may be void for vagueness if it is framed in terms so vague that persons of common intelligence must guess at its meaning and cannot agree on its application. *Voters Educ. Comm.*, 161 Wn.2d at 484. The doctrine has two goals: to provide fair notice as to what conduct is proscribed and to protect against arbitrary enforcement. *Evergreen*, 432 P.3d at 813.

To determine whether a statute is sufficiently definite, we look to the provision in question within the context of the enactment, giving language a sensible, meaningful, and practical interpretation. *Am. Legion Post No. 149 v. Dep't of Health*, 164 Wn.2d 570, 613, 192 P.3d 306 (2008). A statute is not invalid simply because it could have been drafted with greater precision. *Am. Legion*, 164 Wn.2d at 613. A statute's language is sufficiently clear when it provides explicit standards for those who apply them and provides a person of ordinary intelligence a reasonable opportunity to know what is prohibited. *See Voters Educ. Comm.*, 161 Wn.2d at 488.

Statutes are presumed to be constitutional. *Voters Educ. Comm.*, 161 Wn.2d at 481. The party asserting that a statute is unconstitutionally vague must prove its vagueness beyond a reasonable doubt. *Voters Educ. Comm.*, 161 Wn.2d at 481. The asserting party may allege that a statute is either facially invalid or invalid as applied. *See Am. Legion*, 164 Wn.2d at 612. In an as

applied challenge, the statute must be considered in light of the facts of the specific case before the court. *Evergreen*, 192 Wn.2d at 796.

Here, the defendants have not shown RCW 42.17A.255 is unconstitutionally vague as applied. The defendants argue only that, because the PDC stated the statute needed greater clarity, it must be vague. However, the defendants must prove vagueness beyond a reasonable doubt and statutes are not vague merely because they could have been drafted more precisely. *See Voters Educ. Comm.*, 161 Wn.2d at 481; *Am. Legion*, 164 Wn.2d at 613.

RCW 42.17A.255 gives a person of common intelligence fair notice to report their expenditures. A person must report any nonexempt independent expenditure in opposition to a ballot proposition. In opposition to, as defined above, includes legal expenditures to block an initiative from being placed on a ballot. The statute clearly required the defendants to report their nonexempt independent expenditures incurred when opposing the ballot initiatives in court. An ordinary person would believe that, when the defendants acted to prevent a ballot proposition from reaching the voters, their actions were in opposition to that ballot proposition.

RCW 42.17A.255 does not violate the First Amendment and is not void for vagueness as applied to the defendants. Accordingly, the defendants' constitutional arguments fail.

### III. RCW 42.17A.555: THE PORT'S USE OF PUBLIC FACILITIES

The State argues that RCW 42.17A.555 prohibited the Port from filing a lawsuit to oppose STW ballot propositions. The Port argues that it acted lawfully under two statutory exceptions. We hold that the Port's conduct does not fall within either exception.

When declarations of policy require liberal construction, exceptions to the liberal policy are narrowly confined. *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 128, 580 P.2d 246 (1978).

12

No. 49892-8-II

Because FCPA policy mandates that we must liberally construe its provisions, we construe the

FCPA's exceptions narrowly. RCW 42.17A.001; *see Utter v. Bldg. Indus. Ass'n*, 182 Wn.2d

398, 406, 341 P.3d 953 (2015). The party claiming an exception under RCW 42.17A.555 bears

the burden of proving it meets an exception. *See Herbert v. Pub. Disclosure Comm'n*, 136 Wn.

App. 249, 256, 148 P.3d 1102 (2006).[4]

> RCW 42.17A.555 states:
>
> No elective official . . . nor any person appointed to or employed by any public office or agency may use or authorize the use of any of the facilities of a public office or agency, directly or indirectly, for the purpose of assisting a campaign for election of any person to any office or for the promotion of or opposition to any ballot proposition. . . . However, this does not apply to the following activities:
>
> > (1) Action taken at an open public meeting by members of . . . port districts . . . to express a collective decision, or to actually vote upon a motion, proposal, resolution, order, or ordinance, or to support or oppose a ballot proposition so long as (a) any required notice of the meeting includes the title and number of the ballot proposition, and (b) members of the legislative body, members of the board, council, or commission of the special purpose district, or members of the public are afforded an approximately equal opportunity for the expression of an opposing view;
> > . . . .
> >
> > (3) Activities which are part of the normal and regular conduct of the office or agency.

This statute "was enacted to ensure that public resources are not used to provide advantages [or

disadvantages] to a particular candidate or ballot measure." *Herbert*, 136 Wn. App. at 264.

---

[4] *Herbert* addresses RCW 42.17A.555's predecessor, former RCW 42.17.130 (2006), but the current statute and the accompanying WAC contain the same relevant language. *Herbert*, 136 Wn. App. at 256.

13

Although "normal and regular conduct" is not defined in the statute, WAC 390-05-273

defines normal and regular conduct as:

> Normal and regular conduct of a public office or agency, as that term is used in the proviso to RCW 42.17A.555, means conduct which is (1) lawful, i.e., specifically authorized, either expressly or by necessary implication, in an appropriate enactment, and (2) usual, i.e., not effected or authorized in or by some extraordinary means or manner. No local office or agency may authorize a use of public facilities for the purpose of assisting a candidate's campaign or promoting or opposing a ballot proposition, in the absence of a constitutional, charter, or statutory provision separately authorizing such use.

WAC 390-05-273.[5]

A.     *RCW 42.17A.555 Applies to the Port's Use of Financial Resources To File Suit against the STW Ballot Propositions*

The parties do not dispute that the Port utilized public facilities. Rather, the Port argues

that it meets two exceptions to RCW 42.17A.555. We disagree.

"No elective official . . . nor any person appointed to or employed by any public office or

agency may use or authorize the use of any of the facilities of a public office or agency, directly

or indirectly . . . for the promotion of or *opposition to any ballot proposition*." RCW 42.17A.555

(emphasis added).

Here, as discussed above in part II.A of this opinion, the Port made expenditures for legal

services in opposition to the STW ballot propositions.[6] Accordingly, the Port's use of its

---

[5] The Port, for the first time at oral argument, argued that the last sentence of the WAC was improper because it modified a statute. We do not consider this argument. RAP 12.1(a).

[6] The Port does not argue that the phrase "in opposition to any ballot proposition" as used in RCW 42.17A.555, should have a meaning different than the phrase "in opposition to any . . . ballot proposition" as used in RCW 42.17A.255.

financial resources to oppose the STW ballot propositions falls within the conduct regulated by RCW 42.17A.555. The only question then, is whether an exception applies.

B.    *RCW 42.17A.555's Exceptions Do Not Apply to the Port's Conduct*

1. *Normal and Regular Conduct*

The Port argues that the declaratory judgment action to invalidate the STW initiatives was within the RCW 42.17A.555 "normal and regular conduct" exception. Br. of Resp't (Port) at 12. We disagree.

A public office or agency may use public facilities to oppose a ballot proposition if that opposition is part of its "normal and regular conduct." RCW 42.17A.555(3). Normal and regular conduct is defined in WAC 390-05-273. The WAC states that such conduct must be specifically authorized in an appropriate enactment and must be "usual," that is not authorized by some extraordinary means or manner. The WAC clearly states, "No local office or agency may authorize a use of public facilities for the purpose of assisting a candidate's campaign or promoting or opposing a ballot proposition, in the absence of a constitutional, charter, or statutory provision *separately authorizing* such use." WAC 390-05-273 (emphasis added).

Accordingly, the Port must have authorization, either express or necessarily implied, to oppose a ballot proposition in the usual course of its operations. Further, this authorization must arise from a constitutional, charter, or statutory provision separately authorizing the Port to oppose ballot propositions. *See Herbert*, 136 Wn. App. at 256.

Division One of this court discussed normal and regular conduct in *Herbert*. There, a teacher used school mailbox and e-mail systems to distribute ballot initiative materials, arguing that his actions were lawful because e-mail was part of the "normal and regular" conduct of the

school. *Herbert*, 136 Wn. App. at 253, 256. In holding that sending ballot proposition related mail and e-mails was not "normal and regular conduct," Division One determined that the language of the statute and the WAC controlled. *Herbert*, 136 Wn. App. at 256-57. The court noted that the teacher did not cite any constitutional, charter, or statutory provision that separately authorized the use of school mail systems to promote ballot measures. *Herbert*, 136 Wn. App. at 256-57. Further, because these actions were prohibited by the school district's policies, and because the school was not customarily engaged in distributing political materials, Division One held that the teacher's actions were not normal and regular conduct. *Herbert*, 136 Wn. App. at 256-57.

Here, the Port contends that it is vested with an implied power to prevent antidevelopment and unconstitutional legislation, citing 53.08 RCW generally, RCW 53.08.047 and RCW 59.57.030 specifically. The Port argues that because it is often involved in litigation, this litigation contesting the STW ballot propositions was within its normal and regular conduct. The Port supports its broad interpretation of the exception by listing a number of initiative challenge cases with municipalities as parties.[7]

However, the "normal and regular conduct" exception is not so broad as to encompass any type of a party's litigation simply because that party has been involved in litigation in the past. In *Herbert*, the court did not consider whether teachers generally e-mailed each other, but instead considered whether school e-mail was regularly used in the distribution of political

---

[7] The Port also appears to argue that because it had standing, it was authorized to sue under the "normal and regular conduct" exception. But, standing is not determinative as to whether the Port was authorized to expend public funds to oppose a ballot initiative under RCW 42.17A.555.

materials. *Herbert*, 136 Wn. App. at 256-57. Here, then, our focus is not whether the Port has generally engaged in litigation. Rather, we consider whether the Port through its "normal and regular conduct" litigates the scope of the initiative power for ballot propositions.

The Port is authorized by statute to manage the port, its lands, and its employees, and to engage in economic endeavors. *See* RCW 53.08.047; RCW 53.57.030; *see generally* chapter 53.08 RCW. However, the Port does not point to any statute separately authorizing it to oppose ballot propositions as required by WAC 390-05-273.

The Port also cites to cases where municipalities have challenged the scope of ballot propositions or sought a declaratory judgment to determine the legality of some governmental action.[8] Those cases are distinguishable. None of those cases involved an interpretation of RCW 42.17A.555. Instead, they were concerned with justiciability of the claims.[9]

We can find no evidence that the Port's opposition to the STW ballot propositions was either usual or specifically authorized in an appropriate enactment. Accordingly, we hold that

---

[8] The Port lists: *Spokane Entrepreneurial Ctr.*, 185 Wn.2d at 101-05; *Our Water-Our Choice!*, 170 Wn.2d at 6-7; *City of Sequim v. Malkasian*, 157 Wn.2d 251, 259-60, 138 P.3d 943 (2006); *King County v. Taxpayers of King County*, 133 Wn.2d 584, 592, 949 P.2d 1260 (1997); *Whatcom County v. Brisbane*, 125 Wn.2d 345, 346, 884 P.2d 1326 (1994); *Snohomish County v. Anderson*, 124 Wn.2d 834, 836, 881 P.2d 240 (1994); *City of Spokane v. Taxpayers of Spokane*, 111 Wn.2d 91, 94, 758 P.2d 480 (1988); *Municipality of Metro. Seattle v. City of Seattle*, 57 Wn.2d 446, 448, 357 P.2d 863 (1960); *City of Longview v. Wallin*, 174 Wn. App. 763, 783, 301 P.3d 45 (2013); *City of Seattle v. Yes for Seattle*, 122 Wn. App. 382, 387, 93 P.3d 176 (2004); *Pierce County v. Keehn*, 34 Wn. App. 309, 311, 661 P.2d 594 (1983) and two unpublished cases decided before March 1, 2013.

[9] The Port points specifically to *Yes for Seattle*, 122 Wn. App. 382, where the Port of Seattle was a named party to a suit challenging an initiative. However, that case did not mention RCW 42.17A.555 or "normal and regular conduct." Accordingly, *Yes for Seattle* has no bearing on this case.

the Port was not acting within the "normal and regular conduct" exception to RCW 42.17A.555 when it opposed the STW ballot propositions.

2. *Action Taken at an Open Public Meeting*

The Port also argues that its litigation expenditures were proper action according to a vote taken at an open public meeting. We disagree with the Port's interpretation of the statutory exception.

RCW 42.17A.555(1) lists an exception to using public funds to oppose a ballot proposition:

> Action taken at an open public meeting by members of . . . port districts . . . to express a collective decision, or to actually vote . . . to support or oppose a ballot proposition so long as (a) any required notice of the meeting includes the title and number of the ballot proposition, and (b) members . . . or commission of the special purpose district, or members of the public are afforded an approximately equal opportunity for the expression of an opposing view.

The Port argues that because it took a vote to "'ratify the Port's action of filing a Declaratory Judgment and Injunctive challenge of . . . Charter Amendment 5 and Code Initiative 6,'" the actual filing and prosecution of the declaratory judgment action fell within the statutory exception. Br. of Resp't (Port) at 23-24 (quoting CP at 269). But by the statute's plain language, this exception permits Port commissioners to vote to oppose a ballot proposition at a public meeting, assuming the notice and opportunity to be heard requirements are met. This provision authorizes the use of public facilities to "express a collective decision" or to "actually vote" on an expression of support or opposition to a ballot proposition. The exception does not go so far as to authorize the Port to bring litigation in furtherance of its opposition to a ballot proposition.

18

Accordingly, we hold that this exception did not permit the Port to expend public funds to oppose the STW ballot propositions.

C.    *The Port's Remaining Arguments Are Unpersuasive*

Finally, the Port argues that the State impermissibly ignored the PDC's recommendation, that the Port was protecting the integrity of our elections by keeping an invalid initiative off the ballot, and that different rules govern local and state initiatives. We hold that none of these arguments have merit.

First, when the attorney general brought this enforcement action in 2016, the PDC's recommendation was not binding on the State. Former RCW 41.17A.765(1) (2010). The State, through the attorney general, had independent authority to bring this enforcement action. Former RCW 42.17A.765(1). Second, the Port is not charged with protecting the integrity of elections. The Port's duties are explained in chapter 53.08 RCW and do not include an electoral gatekeeping function. Third, although state and local initiative processes may vary in certain circumstances, the Port fails to address how that difference is dispositive here. Neither RCW 42.17A.255 nor RCW 42.17A.555 address differing standards for independent expenditures or public facilities for local as opposed to state initiatives.

The Port's lawsuit in opposition to the STW ballot propositions was neither "normal and regular conduct" of the Port, nor merely a vote to express collective disapproval of the ballot propositions. As a result, the trial court erred by summarily dismissing the State's complaint regarding the Port's use of public funds to oppose the ballot propositions.

ATTORNEY FEES

The State requests attorney fees and costs on appeal under former RCW 42.17A.765(5). Although the State is entitled to costs subject to filing a cost bill, RAP 14.4, we do not rule on the State's request for attorney fees.

A party may recover attorney fees only when authorized by private contract, statute, or equity. *State ex rel. Wash. Pub. Disclosure Comm'n v. Permanent Offense*, 136 Wn. App. 277, 294, 150 P.3d 568 (2006). This court reviews de novo whether a statute authorizes an award of attorney fees. *Niccum v. Enquist*, 175 Wn.2d 441, 446, 286 P.3d 966 (2012).

After the parties completed briefing in this case, the legislature amended former RCW 42.17A.765. This amendment repealed and recodified former RCW 42.17A.765(5). The effect of this amendment was not briefed. And this decision reverses the trial court's order granting summary judgment dismissal, and remands the case for further proceedings. For these reasons, we remand the issue of attorney fees to the trial court to be determined at the conclusion of the trial court's proceedings.

CONCLUSION

In conclusion, we hold that RCW 42.17A.255 required disclosure of the independent expenditures made here in opposition to ballot proposals, that RCW 42.17A.255 does not violate the First Amendment and is not void for vagueness, and the Port failed to show that its use of public facilities fell within exceptions to RCW 42.17A.555. Consequently, we reverse the trial

court's summary judgment order dismissing the action and awarding the defendants' costs and attorney fees, we deny all requests for attorney fees on appeal, and we remand for further proceedings in accordance with this opinion.

Worswick, P.J

We concur:

Sutton, J.

Evans, J.P.T.